Roy F. ETHERIDGE, Plaintiff,

v.

**GROVE MANUFACTURING COMPANY**
and Nixon Machinery and Supply
Company, Defendants.

Civ. A. No. 1663.

United States District Court
W. D. Kentucky,
at Paducah.

July 18, 1968.

————◆————

Chas. A. Williams & Associates, Paducah, Ky., for plaintiff.

Earle T. Shoup, Paducah, Ky., for defendant Grove Manufacturing Company.

George R. Effinger, Paducah, Ky., for defendant Nixon Mach. & Supply Co.

## MEMORANDUM

SHELBOURNE, Senior District Judge (by designation).

July 8, 1968, this case came on for hearing, by agreement of counsel for parties, for an oral argument on the motions of the defendants Grove Manufacturing Company and Nixon Machinery and Supply Company, at Paducah, Kentucky.

The separate motions of the defendants seek a dismissal of this action for lack of jurisdiction and to quash the service of process. The defendant Grove Manufacturing Company is a corporation organized under the laws of the State of Pennsylvania and has its principal office and place of business at Shady Grove, Pennsylvania. It has no place of business in the State of Kentucky and has not appointed an agent upon whom process could be served within the State of Kentucky as required of nonresident corporations by Section 271.385(2) Kentucky Revised Statutes.

The defendant Nixon Machinery and Supply Company is a corporation created under the laws of the State of Tennessee and has its principal office and place of business at Nashville, Tennessee, and did not at any time and does not now maintain an office or principal place of business within the State of

Kentucky, and has not appointed an agent upon whom process could be served in the State of Kentucky as required of non-resident corporations by Section 271.385(2) Kentucky Revised Statutes.

The machine or equipment involved in this action is a crane equipped with a boom and was manufactured by the defendant Grove and sold by it to defendant Nixon Machinery and Supply Company on April 15, 1966, and shipped to Nixon at Chattanooga, Tennessee, by truck of a public carrier. The sale to Nixon was financed by Credit Alliance Corporation, New York, New York. The crane was leased to Blount Brothers Construction Company of Montgomery, Alabama, by an agreement dated May 30, 1966, between Nixon and Blount Brothers Construction Company, and was delivered by public carrier to Blount, Ft. Campbell Army Base, Clarksville, Tennessee, on or about June 2, 1966. The machine was in the possession of Blount Brothers Construction Company at Ft. Campbell, Kentucky, on September 20, 1966, the date the accident is alleged to have occurred, although previously on August 31, 1966, Nixon had sold the crane to R. L. Eatherly. That sale was made, however, with the understanding that Blount Brothers Construction Company would retain the machine until they finished work which they had under contract at Ft. Campbell on the date the machine was sold to Eatherly by Nixon Machinery and Supply Company.

Plaintiff contends that personal jurisdiction of the defendants exists by reason of the service of process upon each of the defendants pursuant to Kentucky's "long arm" statute, Section 271.610(2) Kentucky Revised Statutes, which is as follows:

"(2) Any foreign corporation that does business in this state without having complied with the provisions of KRS 271.385 as to designation of process agent shall, by such doing of business, be deemed to have made the Secretary of State its agent for the service of process in any civil action instituted in the courts of this state against such corporation involving a cause of action arising out of or connected with the doing of business by such corporation in this state. The plaintiff in such an action shall set forth in his petition the post office address of the home office of the corporation."

Each of the defendants, while denying that it has carried on business in the State of Kentucky to the extent that it can now be deemed to have made the Secretary of State its agent for service of process in this action, strongly insists that the alleged cause of action set up in the complaint does not involve a "cause of action arising out of or connected with the doing of business by such corporation in this state". The manufacturer of the product involved, Grove, denies having any connection whatever with Blount Brothers Construction Company and contends that its sale to Nixon was completely consummated so far as it participated when the crane was delivered by public carrier to Nixon at Chattanooga, Tennessee, and insists that it had no interest or claim of any kind in the crane or machine after April 15, 1966, the date of its assignment of the conditional sales contract to Credit Alliance Corporation.

Defendant Nixon's contention is that it leased the crane to Blount Brothers at Clarksville, Tennessee, and that it did not have any connection whatever with Blount's moving the equipment into Kentucky and using it in the State of Kentucky.

On August 31, 1966, Nixon sold the crane to R. L. Eatherly and had no title to the crane after that date.

Kentucky's "long arm" statute, K.R.S. 271.610, supra, hinges jurisdiction on (1) that the corporation does business in the state without having complied with the provisions of K.R.S. 271.385 by designating a process agent, and (2) that the action in which the process is served upon the Secretary of State as process agent of the foreign corporation shall be

a cause of action arising out of or connected with the doing of business by the corporation in Kentucky. Counsel for the plaintiff and for the defendant corporations all rely upon the case of International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, decided in 1945. The Supreme Court said that the criteria by which it marked the boundary line between activities which justified subjecting a corporation to suit and those which do not cannot be simply mechanical or quantitative, and that the test is not whether the activity which the corporation has seen fit to procure through its agents in another state is a little more or a little less. In the *International Shoe* case the activities that were carried on by the Company's agents and employees were neither irregular nor casual. The Supreme Court described them as systematic and continuous throughout the years involved and resulted in a large volume of interstate business. Of vital importance in that case, and subsequent cases, the obligation which was sued upon arose out of those very activities and established sufficient contacts or ties with the State of Washington to make it reasonable and just according to traditional concepts of fair play and justice to permit the state to *enforce the obligations which the Company incurred there.*

The *International Shoe* case modified the long standing holding of the Supreme Court in Pennoyer v. Neff, 95 U. S. 714, 24 L.Ed. 565, and the Court said "presence" in the state had never been doubted when the activities of a corporation have not only been continuous and systematic, *but have given rise to* the liability sued on, even though no consent to be sued or authorization to an agent to accept service of process had been given; the Court said:

"It has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there."

In July 1951 the case of Star Elkhorn Coal Co. v. Red Ash Pocahontas Coal Co., 102 F.Supp. 258, D.C. E.D.Ky., was decided. In that opinion the Court said:

"The term 'doing business' has been so frequently discussed by courts and variously applied in different cases that authority can be found for any position a court takes in a given state of fact."

The facts in that case were that a coal agency in Kentucky had some one to four employees for the purpose of purchasing, inspecting, accepting and rejecting coal at various tipples and mine operations. It is apparent that the obligation sued on in the *Star Elkhorn Coal* case had not only been continuous and systematic, but had given rise to the liabilities sued on and the long arm statute was held sufficient to give the court jurisdiction of the defendant. The motion to quash the return on the summons was overruled.

Another case, also from the Eastern District of Kentucky is styled Brandeis Mach. & Sup. Co. v. Matewan Alma Fuel Corp., 147 F.Supp. 821, decided in 1957. The defendant coal company's activities were limited to the production of coal in West Virginia, although its stockholders lived in Kentucky, it maintained a bank account in Kentucky, and its stockholders met informally in Kentucky to discuss matters of business of the corporation. The written contract, which was the basis of the action sued upon, and which was dated February 8, 1956, referred to the Matewan Alma Fuel Corporation of Pikeville, Kentucky, as the party of the second part, although it was shown by the testimony of its secretary-treasurer that the contract was signed by him in West Virginia where the principal office of the business was located. Judge Swinford said:

"A person or corporate entity has a right to defend itself at home. Justice, to those dealing with the corporation, has demanded that this rule be modified where the corporation has

gone into a foreign jurisdiction in furtherance of its business and engaged in activities with residents and citizens of the foreign jurisdiction, but to require the defendant to defend this action away from its home where its office is located and where it carries on its activities is to deny to it a fundamental right and to lay upon it a great and unreasonable burden."

In 1957 the Supreme Court decided the case of McGee v. International Life Insurance Company, 355 U.S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223, and in the following year decided Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. The *McGee* case involved a long arm statute of California apparently aimed at insurers and which was broad and general. Referring to the *McGee* case in the Hanson v. Denckla case the Court said:

"In *McGee* the Court noted the trend of expanding personal jurisdiction over nonresidents. As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of Pennoyer v. Neff, 95 U.S. 714 [24 L.Ed. 565,] to the flexible standard of International Shoe Co. v. Washington, 326 U.S. 310 [66 S.Ct. 154,]. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, [418, 77 S.Ct. 1360; 1 L.Ed.2d 1456]. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may

not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him."

\* \* \* \* \* \*

"The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State. In that respect, it differs from McGee v. International Life Ins. Co., 355 U.S. 220, [78 S.Ct. 199, 201, 2 L.Ed.2d 223] and the cases there cited. In *McGee*, the nonresident defendant solicited a reinsurance agreement with a resident of California. The offer was accepted in that State, and the insurance premiums were mailed from there until the insured's death. Noting the interest California has in providing effective redress for its residents when nonresident insurers refuse to pay claims on insurance they have solicited in that State, the Court upheld jurisdiction because the suit 'was based on a contract which had substantial connection with that State'. In contrast, this action involves the validity of an agreement that was entered without any connection with the forum State." (Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228)

In 1964 the Court of Appeals of Kentucky decided the case of Field Enterprises Educational Corp. v. Louise Hopkins, Ky., 378 S.W.2d 797. Process was there served on the defendant foreign corporation under K.R.S. 271.610 (2), the long arm statute involved in the case at bar. The proof in that case showed that the defendant not only employed salesmen in Kentucky, but had a division manager who maintained an office in Louisville, and the Court held that the corporation was doing business in Kentucky. The matter complained of in the suit was that defendant's agent had entered plaintiff's home and removed certain files and sales materials belonging to her. The appellant complained on appeal that the acts charged to have been committed by the defendant's agent were criminal for which the

corporation could not be responsible. The Court made short shrift of this contention, holding that even assuming that the acts could be characterized as crimes, they no less constituted torts for which the corporation could be civilly liable, and a judgment for plaintiff was affirmed.

A very recent case from the Kentucky Court of Appeals, Hawes v. Cumberland Contracting Company, 422 S.W.2d 713, decided in 1967, involved an appeal from a judgment dismissing the Georgia Revenue Commissioner's action in the Wayne Circuit Court, Kentucky, to enforce the satisfaction of a 1963 judgment which the Commissioner had obtained against Cumberland Contracting Company in the Supreme Court of Houston County, Georgia. The facts in that case were that Cumberland had done a substantial business in Georgia in the year 1953, but had done no business in Georgia since that time. Cumberland had not had a residence, place of business or a designated agent for service of process in Georgia. Cumberland had incurred tax obligations on the business it had done in Georgia in 1953 for unpaid sales and use taxes. The Commissioner instituted an action in Georgia to recover a judgment for the delinquent taxes and proceeded in the Georgia court to obtain jurisdiction under Georgia's long arm statute enacted in that state in 1957. Notice of the suit was mailed to Cumberland in accordance with the Georgia long arm statute. Following the entry of the 1963 judgment in Georgia, suit was filed in the Circuit Court of Wayne County, Kentucky, in 1964. Subsequent proceedings in the Kentucky court resulted in a judgment overruling the Commissioner's motion for summary judgment, and in the entry of a summary judgment in favor of Cumberland, dismissing the action instituted on the Georgia judgment. The Kentucky Court of Appeals reversed the judgment of the Wayne Circuit Court and directed that judgment be entered granting the relief sought on the Georgia judgment. The court held that the Georgia court had

jurisdiction under the long arm statute under the authority of McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, and International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154. The facts in this Kentucky case and in the *International Shoe* case are very similar. The suit in *International Shoe* sought to recover under the long arm statute for taxes accrued by the activities of the corporation in the State of Washington upon which the State of Washington sued. Both essentials necessary to establish liability were present; that is, there was no question but that International Shoe Company had done business in the State of Washington, and the matter sued upon involved taxes accrued by reason of the business done in Washington by the Company's agents, and for this reason Judge Palmore held that the *McGee* and *International Shoe* cases were dispositive authority for the reversal of the judgment dismissing the suit of the Georgia Revenue Commissioner in the Wayne Circuit Court, Kentucky.

In 1964 there was decided the case of Agrashell, Inc. v. Bernard Sirotta Company, 229 F.Supp. 98, D.C. E.D. N.Y. This case was before the District Court upon defendant's motion to quash service on third party defendant, which was a non-resident corporation, and to dismiss the third party complaint and it was held that evidence of correspondence between the buyer and seller, and of delivery of goods in New York by trucks not owned by the seller, failed to establish contacts of the non-resident corporate seller with the State of New York such as would sustain jurisdiction over the foreign corporation. It was held that the acts of a non-domiciliary third party defendant in relation to the State of New York failed to establish that such defendant was transacting any business within the state which would subject it to personal jurisdiction within the state. The Court said:

"The New York statute does not spell out with any particularity the meaning of the phrase 'transacts any busi-

ness within the state' and there are no precise standards of measurement to determine the issue. Each case depends on its own particular facts. The principles applicable, however, are derived from the familiar landmark cases of International Shoe Co. v. State of Washington, McGee v. International Life Ins. Co., and Hanson v. Denckla. (Citations omitted)

The Court further stated:

"Various factual patterns of state contacts appear from the cases but none of the authorities lay down the exact boundary between jurisdictional and nonjurisdictional activities because the test is not mechanical or quantitative."

The New York Court was held without jurisdiction.

 Whether a corporation is doing business within a state presents a question of fact and a decision depends upon the particular facts of each case. Jennings v. McCall Corporation, 320 F.2d 64, C.A.8, 1963; Agrashell, Inc. v. Bernard Sirotta Company, D.C., 229 F.Supp. 98; Color Technique, Inc. v. Don Wallace, Inc., D.C., 241 F.Supp. 952; Brunette Sunapee Corp. v. Zeolux Corp., 228 F.Supp. 805 (D.C. N.Y.) 1964; Frazier, III, et al v. Alabama Motor Club, Inc., et al, 349 F.2d 456, C.A.5, 1965.

Summarizing the facts in this case, we think it questionable whether the defendant Nixon Machinery and Supply Company was "doing business in Kentucky" as that phrase is used in the Kentucky long arm statute, but it is apparent to this Court that the manufacturer, Grove Manufacturing Company, was not doing business in Kentucky. Neither of the defendants ever had a representative who contacted prospective customers in Kentucky who was a resident of Kentucky, or devoted any substantial time to furthering the business of either defendant in Kentucky. It is, in the opinion of the Court, without controversy that neither of the defendants had any connection *in the State of Kentucky* with the sale or lease

of the accused crane, and hence the suit does not eminate and is not connected with any business done by either defendant in Kentucky. This is not a cause of action arising out of or connected with any business done by either of the defendants in the State of Kentucky as contemplated by Section 271.610(2), Kentucky Revised Statutes.

This Court acquired no jurisdiction by reason of the attempted service of process under the long arm statute and an order will be entered quashing the return on the process and dismissing the complaint as to each and both defendants, and a judgment is entered contemporaneously with this memorandum so disposing of this action.