**Elgin A. McKENNA, as Executrix of the Estate of Patrick A. McKenna, Deceased, Appellant,**

v.

**Stewart L. UDALL, Secretary of the Interior, Appellee.**

**No. 21915.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 21, 1969.

Decided July 10, 1969.

Mr. Milo G. Coerper, Washington, D. C., for appellant.

Mr. William M. Cohen, Atty., Department of Justice, with whom Asst. Atty. Gen. Clyde O. Martz, Messrs. Roger P. Marquis and Herbert Pittle, Attys., Department of Justice, were on the brief, for appellee. Mr. S. Billingsley Hill, Atty., Department of Justice, also entered an appearance for appellee.

Mr. Stanley D. Robinson, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, for Texaco, Inc., as amicus curiae. Mr. William C. Weitzel, Jr., New York City, was on the brief for Texaco, Inc., as amicus curiae, urging affirmance. Mr. William E. Rollow, Washington D. C., also entered an appearance for Texaco, Inc., as amicus curiae.

Before BAZELON, Chief Judge, BURGER * and McGOWAN, Circuit Judges.

* Circuit Judge (now Chief Justice) Burger did not participate in the decision.

McGOWAN, Circuit Judge:

The parties being in agreement in the District Court that there were no disputed issues of fact, the case was disposed of on cross-motions for summary judgment, and the complaint dismissed. In support of this judgment here, appellee urges not only that the result so reached reflects an accute appraisal of the merits of the controversy but also that it is warranted by the absence in this litigation of indispensable parties. Since we think the latter is clearly true, we affirm on that ground and do not reach the merits.

I

Beginning in 1942, the Department of the Army acquired many thousands of acres of land in Kentucky for Camp Breckenridge. At that time Congress had made no provision for the leasing of mineral deposits in *acquired* lands, as distinct from the *public* lands not taken from private ownership. The Attorney General had, however, in 1941 given an opinion that any department or agency acquiring lands which were vulnerable to oil drainage from adjacent areas could, in the exercise of inherent power to protect federal property, enter into protective oil leases directly, or could authorize another agency to handle such leasing for it. 40 Op.Atty. Gen. 41. The Camp Breckenridge lands proved to be exposed to this danger of loss, and the Army sought the expert services of the Department of the Interior. Public Land Order No. 729, 16 Fed.Reg. 6132 (1951), was issued which authorized Interior, subject always to the Army's prior approval, to issue leases necessary to protect the Camp Breckenridge oil deposits from drainage.

On December 5, 1962, the Army reported Camp Breckenridge to the General Services Administration as excess to its needs, and, on February 7, 1963, GSA declared the property to be surplus. It moved to sell the mineral interests by competitive bids receivable on April 15, 1965, and in due course asked the Interior Department formally to revoke Public Land Order No. 729 because of the possibly adverse effect it might have on the bidding. Interior agreed to do so, and Public Land Order No. 3706, 30 Fed. Reg. 7754 (1965), was issued to this end.

Appellant's predecessor in interest saw, in December, 1964, GSA's advertised invitation for bids. The following March he filed several lease offers with Interior under the noncompetitive leasing provisions of the Mineral Leasing Act for Acquired Lands.[1] These offers were declined by Interior for lack of jurisdiction, coincidental with the announcement by GSA of the names of the successful bidders, to whom GSA gave appropriate title deeds. Successive appeals within the Interior Department against the rejection of appellant's offers culminated in a decision by appellee upholding the rejection. This suit was then filed in the District Court against appellee alone, seeking relief which would have the effect of placing in irreconcilable conflict the deeds given by GSA to the successful bidders, on the one hand, and the leases from appellee which appellant asserts he is entitled to get, on the other.

1. Enacted in 1947, this statute was designed to fill the gap in leasing authority *vis-a-vis* acquired lands. 30 U.S.C. § 351 *et seq.* (1964). Under its terms as applied to the Camp Breckenridge lands, appellant would have been entitled to leases simply because he was the first applicant. No bonus payments in competition with other applicants would have been required. In contrast, the sums paid by the successful bidders to GSA were very substantial indeed, giving rise apparently to some opinion in the Interior Department itself that the U. S. taxpayer was better off than he would have been if appellant's lease offers were accepted. The determinative factor on the merits remains, of course, the scope and nature of the authority conferred by Congress. It was the position of the Interior Solicitor that Public Land Order No. 729 placed the Camp Breckenridge mineral interests under appellee in such a way that only he could declare them surplus. Appellee did not, however, share this view.

# 1174

## II

■■ We need not stop long to consider why it is that GSA, and especially its grantees, are necessary parties. The claim is that the former wrongfully sold federal property; if that claim is sound, the deeds given by GSA to the successful bidders are invalid. Failure to cancel the deeds would put appellee in the position of leasing property which the title records show as owned by someone else. Appellant's grievance is not solely directed against appellee for rejecting his lease offers but it is also aimed at GSA's action in selling the property to the highest bidders. By any meaningful measure of the concept of indispensability, this lawsuit did not in its inception have the breadth of reach that its allegations required. Our question is not whether indispensable parties, within the contemplation of Rule 19(a), Fed.R.Civ.P.,[2] were omitted, but what should be done about it. We turn to the express provision made on this score in the Federal Rules of Civil Procedure. Rule 19(b),[3] set out in the margin, enumerates the factors which a court should consider in deciding whether to dismiss an action because an absent person is indispensable

to the just resolution of the controversy. The Supreme Court, in Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), recently held that Rule 19(b) is a proper statement of the law of indispensability as it has developed over the years. That history, rooted in Shields v. Barrow, 17 How. 130, 15 L.Ed. 158 (1854), has recognized equitable considerations as paramount in determining the question of indispensability.[4] Here, where it would seem that another forum was available in which all the interested parties could be found and joined, this action should be dismissed.

If only the first three factors contained in Rule 19(b) were balanced in attempting to decide whether the purchasers of the land are indispensable parties, this court would be inclined to rest upon its own precedent in Barash v. Seaton, 103 U.S.App.D.C. 159, 256 F.2d 714 (1958). As to these three factors, the court sees no significant distinction from Barash. The fact that in Barash the absent parties were leaseholders, whereas here they putatively have acquired title, has no bearing on the issue of indispensability.[5]

2. A person subject to service of process must, under Rule 19(a), be joined if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

In her reply brief in this court, appellant represented that only two of the five purchasers appeared to be subject to service of process in the District of Columbia. Thus it was not possible for the District Court to order the joinder of all the necessary parties.

3. (b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a) (1)-(2) here-

of cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

4. See generally 3A Moore, Federal Practice ¶¶ 19.01, 19.07 (2d ed. 1968).

5. See also Cherokee Nation v. Hitchcock, 187 U.S. 294, 23 S.Ct. 115, 47 L.Ed. 183 (1902).

This, however, still leaves to be considered the fourth factor listed in Rule 19(b), *i.e.*, "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Although *Barash* did not deal with the issue of indispensability in depth it is obvious from the facts of that case that the court's determination was based primarily on its knowledge that, if plaintiff could not prevail in this jurisdiction, there was no other court to which he could turn. In the interim between the *Barash* case and this one, however, Congress has passed a statute, the Mandamus and Venue Act of 1962,[6] which has opened up to appellant other tribunals than those in the District of Columbia.

In order to bring an action in a federal district court in Kentucky in which both the corporate purchasers from GSA and the relevant Government officials could be joined, it is necessary to establish that (1) all defendants could be served there, (2) the court will have jurisdiction over the subject matter of the suit, (3) effective relief would be available in that court, and (4) the venue of the court would be proper.[7]

In his argument to the District Court, counsel for appellant stated that he "didn't know if we could get service on [the purchasers] in Kentucky." Then, he continued: "They have sub-contracted the drilling on the land and I don't know that they have any permanent office or anything of that nature in Kentucky. I have not been able to find it if that is the case. I think it would be very difficult to attempt to proceed in Kentucky." Finally, and most significantly, he candidly admitted: "In any event, we preferred to proceed as we have." But, especially since Congress has acted to make Government officials amenable to suit outside the District of Columbia, it is not enough simply to assure a D.C. court that one prefers to litigate here.

It is, in any event, scarcely to be thought that appellant would not be able to effect personal service in Kentucky upon the corporate purchasers of the property. Field Enterprises Educ. Corp. v. Hopkins, 378 S.W.2d 797 (Ky. 1964), is authority for the proposition that Kentucky adheres to the broad conception of the scope of personal service enunciated by the Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[8] Here, not only are the purchasers plainly "doing business" within the State of Kentucky in that they are engaging through agents in drilling operations upon their own property, but also appellant's cause of action arises out of that same property. Accordingly, under the liberal provisions for service of process on a foreign corporation, whether it is registered or not, *see* Ky. R.Civ.P. 4.04(5); Ky.Rev.Stat. §§ 271.-385, 271.610(2), appellant appears to have had inadequate cause to assume that personal jurisdiction over the purchasers in a Kentucky court poses a serious problem.

Little need be said about subject matter jurisdiction. The case clearly presents a "federal question" under 28 U.S.C. § 1331 (1964). A more complex issue is whether a District Court, sitting in Kentucky, could give appellant adequate relief if it viewed her claim as

---

6. 28 U.S.C. §§ 1361, 1391(e) (1964).

7. In the District Court counsel for appellant also appeared to fear that the purchasers might either seek the posting of a bond or counterclaim for damages if he brought an action in Kentucky. Neither concern is a ground for determining our disposition. A further problem not mentioned by appellant is whether the relevant statute of limitations may have run with respect to appellant's suit in Ken-

tucky. In an action to enforce a federal right, however, federal equitable doctrines are applicable. *See* Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

8. Even in Etheridge v. Grove Mfg. Co., 287 F.Supp. 437 (W.D.Ky.1968), where the court held the defendant beyond the reach of a tort suitor, the court held that *International Shoe* was the applicable standard.

meritorious. It is the recent statute[9] passed by Congress since *Barash* for the express purpose of broadening the remedial powers of federal district courts which distinguishes that case from the present one. Prior to 1962, no federal district court in the nation other than the District Court for the District of Columbia possessed the power to grant a writ of mandamus against a federal official.[10] This created an absurd situation in which litigants with just claims against the federal government were compelled to travel long distances at considerable expense in order to prosecute their causes of action. Accordingly, the Congress provided in 28 U.S.C. § 1361 (1964) that

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

On the basis of this provision, there can no longer be any question but that a federal district court in Kentucky would have the same remedial powers in this controversy as the District Court for the District of Columbia would have.

This leaves the question of venue—a matter also dealt with by the Mandamus and Venue Act of 1962.[11] In order to make effective the expanded jurisdiction of federal courts outside the District of Columbia, it was necessary to enlarge

venue in those courts to allow plaintiffs to bring federal officials or federal agencies into those courts. Were the purchasers not also defendants, it is clear that this statute would provide a Kentucky court with venue since "the real property involved in the action is situated" there. The only possible difficulty arises because of the ambiguous nature of the requirement that "each defendant" be a federal officer or agency. But it is not to be thought that Congress intended to preclude a Kentucky federal court from hearing this action with all parties present even though it would be a proper forum if only the Government officials, or only the purchasers, were defendants.

However, it is not necessary to decide this question of interpretation, since it is clear in this case that neither the purchasers nor the Government would be able to raise venue objections if appellant now sues in Kentucky. Venue as to the purchasers would clearly be proper under 28 U.S.C. § 1391(c) (1964), and perhaps even under 28 U.S.C. § 1391 (b) (1964), and the purchasers would certainly have no standing to raise a venue objection as to the Government officials. The Government, however, is also precluded from so objecting. Not only is it significant that it is the Government which has made the indispensable party argument in this jurisdiction, but it was stated to the District Court by the Government that

---

9. *See* note 6 *supra*.

10. For a general discussion of his history, *see* Byse & Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Administrative Action, 81 Harv.L.Rev. 308 (1967).

11. 28 U.S.C. § 1391(e) (1964):
A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2)

the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action.
The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.
*See also* S.Rep. No. 1992, 87th Cong., 2d Sess. (1962) ; H.Rep. No. 536, 87th Cong., 1st Sess. (1961), U.S.Code Cong. & Admin.News, p. 2784.

"as a matter of policy it has been decided not to raise the question of venue in cases except in very unusual [circumstances] and I would suppose if a suit were instituted in Kentucky against all of the oil companies and the Secretary I don't believe the Government could raise the defense."

Since appellant has available another forum, with remedial powers equally as efficacious as those possessed by the District Court, and in which all persons having an interest in the outcome of the litigation can be joined, the judgment dismissing the complaint is affirmed.

It is so ordered.