**NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Plaintiffs,**

**v.**

**TENNESSEE VALLEY AUTHORITY, and Aubrey J. Wagner, Chairman Tennessee Valley Authority, Defendants, National Audubon Society, Inc., Applicant for Intervention.**

**No. 71 Civ. 919.**

United States District Court, S. D. New York.

Dec. 8, 1971.

Richard M. Hall, New York City, for plaintiffs Natural Resources Defense Council and Sierra Club.

William A. Butler, East Setauket, N. Y., for plaintiff Environmental Defense Fund, Inc.

Gifford, Woody, Carter & Hays, New York City, for National Audubon Society, Inc., applicant for intervention.

Robert H. Marquis, Gen. Counsel, T. V. A., Knoxville, Tenn., Mudge, Rose, Guthrie & Alexander, New York City, for defendant T. V. A.

MOTLEY, District Judge.

## I. *Statement of Facts*

This action arises from the alleged practice of the Tennessee Valley Authority (TVA) of purchasing and using strip-mined coal. In general, strip-mining is a practice of extracting coal by removing the covering top and subsoils, depositing them nearby and then removing the coal from the newly exposed surface. According to plaintiffs, strip-mining directly causes severe water pollution, defaces the land, and renders it useless for recreation, wildlife, timber production or living.

Plaintiffs charge that in purchasing and using strip-mined coal, the TVA has failed to comply with the mandates of the recently enacted National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321, et seq., in its planning, decision making, and daily administration. Specifically, it is charged that 1) defendants have failed to comply with § 102(2) (C) of NEPA by failing to prepare, circulate and file the requisite environmental impact statement prior to purchasing and using strip-mined coal; 2) defendants have failed to comply with § 102(1) of NEPA by failing to interpret and administer the TVA Act and regulations in a manner consistent with the policies expressed in NEPA; 3) defendants have failed to comply with §§ 102(2) (C) (iii) and 102(2) (D) of NEPA by failing to develop and describe appropriate alternatives to the purchase and use of strip-mined coal and properly evaluate their purchases in light of such alternatives; and 4) defendants have violated § 102(2) (G) of NEPA by failing to develop and use ecological information in the decision to purchase and use strip-mined coal.

The first cause of action alleges these failures of procedure in planning, decision making and administration with respect to a contract by the TVA for the purchase of coal strip-mined from land

not owned by TVA; the second cause concerns similar failures with respect to a purchase of strip-mined coal from land owned by TVA. In both of these counts, plaintiffs seek to have the TVA action in awarding the contracts declared illegal, and to have the defendants enjoined from purchasing any coal under the contracts until the requirements of NEPA are met. The third cause of action relates to the TVA's overall policy of purchasing and using strip-mined coal, and similarly seeks to restrain that policy until the requirements of NEPA are met.

The case is now before the court on defendants' motion to dismiss the complaint. The grounds advanced for dismissal are: 1) improper service of process, 2) improper venue, 3) lack of jurisdiction, and 4) failure to join indispensable parties. For the reasons given below, the court finds all of these grounds insufficient and denies defendants' motion. National Audubon Society, Inc. has moved to intervene, and its motion is granted.

## II. *Service of Process*

■ Defendants' claim that service of process was improper is totally without merit. Plaintiffs assert, and defendants do not deny, that defendants were duly served by certified mail. Subsection (e) of 28 U.S.C. § 1391 provides that in civil actions "in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States . . ." service of the summons and complaint on the officer or agency "may be made by certified mail beyond the territorial limits of the district in which the action is brought." That method of delivery is designed to supersede the method specified in Rule 4(d)(5) Fed.R.Civ.P. It is not disputed that TVA is an agency of the United States. The instant action falls within the class of cases described above, so service of process was proper, regardless of whether there is venue in this dis-

trict. See Brotherhood of Locomotive Engineers v. Denver and Rio Grande R. R. Co., 290 F.Supp. 612, 616 (D.Colo. 1968), aff'd, 411 F.2d 1115 (10th Cir. 1969); Powelton Civic Home Owners Assoc. v. Department of Housing and Urban Development, 284 F.Supp. 809, 833 (E.D.Pa.1968).

## III. *Venue*

Plaintiffs claim venue under 28 U.S.C. § 1391(e), which provides in pertinent part:

> A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action.

Defendants launch a multi-pronged attack on the applicability of this section, contending A) § 1391(e) does not apply to the TVA, B) even if it does, all plaintiffs do not reside within this District, and C) real property is involved in the action.

A) Section 1391(e) provides for venue in actions against agencies of the United States or their officers ". . . except as otherwise provided by law. . . ." Defendants think they have found one of these exceptions in § 8(a) of the Tennessee Valley Authority Act, 16 U.S.C. § 831g. That section states in pertinent part:

> The Corporation shall be held to be an inhabitant and resident of the northern judicial district of Alabama within the laws of the United States relating to the venue of civil suits.

The issue apparently one of first impression in this Circuit, is thus whether this language of § 831g amounts to an exception to the general venue require-

ments of § 1391(e). Both the wording of § 831g and the legislative history of § 1391(e) tend to indicate that it does not.

■ In its very terms § 831g deals only with the place of inhabitance or residence of the TVA, leaving questions of venue to the appropriate venue statutes. Nor is it unreasonable to assume that Congress included § 831g solely for the purpose of definitively settling TVA's place of residence, in light of the difficulties often posed by the need to determine the residence of public officials and agencies. See 7 Moore's Federal Practice (2d ed. 1970) ¶ 0.144 [17]. Moreover, where the draftsmen of the TVA Act wanted to create exceptions to the general venue statutes they did so in far more explicit language than appears in § 831g. Thus, 16 U.S.C. § 831x, § 25 of the TVA Act, provides that condemnation proceedings "shall be instituted in the United States district court for the district in which the [property interest] is located. . . ." When Congress has sought to establish special venue provisions for other special kinds of civil actions, it has spoken in language far more mandatory and specific than the language of § 831g. See generally 1 Moore's Federal Practice ¶ 0.144.

In a recent decision a District Court in the District of Columbia has held § 831g to be an exception to the general venue provisions of § 1391(e). Environmental Defense Fund, et al. v. Tennessee Valley Authority, et al., Civil No. 1615–71 (D.D.C. filed Oct. 13, 1971). That Court concluded that with the TVA Act Congress intended to have suits against TVA brought in Alabama. That intent, the Court reasoned, had not been effectively negated by Congress' enactment of § 1391(e) in 1962. It is at least as reasonable to assume, though, that the draftsmen of the TVA Act intended to have suits against TVA be governed by national venue policy. In 1933 that poli-

cy was for venue to adhere closely to residence. See 28 U.S.C. § 112(a). There is no clear indication that venue for the TVA was to remain geared to residence even after a change in the general federal venue philosophy.[1]

The only other case in which a special venue statute was held to be an exception to § 1391(e), Paley v. Wolk, 262 F. Supp. 640 (N.D.Ill.1965), cert. denied, 386 U.S. 963, 87 S.Ct. 1031, 18 L.Ed.2d 112 (1967), concerned the issue of venue for suits to upset decisions of the Patent Board of Appeals, 35 U.S.C. § 145. That section of the patent laws specifically designated the United States District Court for the District of Columbia as the only court in which suit could be brought.

■ Fehlhaber Pile Co. v. TVA, 81 U.S.App.D.C. 124, 155 F.2d 864 (1946), upon which defendants rely, establishes only what we have already said: that § 831g determines the *residence* of TVA. The Court in *Fehlhaber* dismissed the case for improper venue not because § 831g set the venue in the Northern District of Alabama, but because the applicable venue statute, 28 U.S.C. § 112(a), geared venue strictly to defendant's place of residence. The legal residence of TVA remains in the Northern District of Alabama to this day, but due to the enactment of § 1391(e) in 1962, actions of this kind need not be brought only in defendant's place of residence any longer.

Not only does the wording of § 831g imply that it is not to be construed as an exception to § 1391(e), but the legislative history of § 1391(e) itself strongly suggests that Congress did not intend to exempt TVA from the coverage of § 1391(e). The Senate report accompanying H.R. 1960, section 2 of which became § 1391(e) states:

"The committee also approved an amendment to section 2 of the bill providing that the provision with re-

---

1. *Despite their importance to their argument,* defendants failed to brief the question of Congress' intent in enacting §

831g, or to seriously address the question of whether the private contractors are indispensible parties.

spect to venue should apply only to the extent that it is not otherwise provided by law. Examples of such proceedings covered by this provision are proceedings brought with respect to Federal taxes and under Section 5 of the act of September 26, 1961, relating to immigration." S.Rep.No.1992, 87th Cong., 2d Sess. 4 (1962). U.S. Code Cong. & Adm.News, p. 2787.

The examples given in the report are traditional venue provisions worded quite differently than § 831g. See, *e. g.*, 28 U.S.C. § 1396; 8 U.S.C. § 1105a.

The exception in § 1391(e) was first suggested by the Department of Justice in a letter to the Chairman of the Committee on the Judiciary.[2] The letter stated the exception as follows:

"Except where a special statutory proceeding for judicial review relevant to the subject matter is provided in any court specified by statute, . . ." (U.S.Code Cong. & Adm. News, 87th Cong., 2d Sess. (1962), p. 2789).

This language shows that what the Department of Justice was concerned about was a conflict between subsection (e) of § 1391 and a traditional venue statute. The Court in Paley v. Wolk, *supra,* interpreted § 1391(e) in this spirit, stating: "[28 U.S.C. § 1391(e)] is inapplicable *where the venue for a particular action is specified by statute.*" *Id.* 262 F.Supp. at 642 (emphasis added). As noted above, § 831g does not so specify.[3]

Section 1391(e) was designed to facilitate plaintiffs in bringing actions against the Government. Such suits serve as one means of keeping government responsive to the citizenry, and of insuring that the myriad executive and administrative agencies respond to the equally multifarious dictates of Congress. Exceptions to § 1391(e) should therefore be construed narrowly. While we agree with the District Court of the District of Columbia that the issue is not entirely free from doubt, we therefore hold that § 831g is not an exception to § 1391(e).

B) Section 1391(e)(4) lays venue in the district in which "the plaintiff resides if no real property is involved in the action." With respect to this phrase, defendants first contend that "the plaintiff" means "all plaintiffs," and since plaintiffs Environmental Defense Fund (EDF) and Sierra Club do not reside in the Southern District of New York, § 1391(e) is not properly invoked. This issue has never been decided in this Circuit, and has been addressed in only one other reported case, Environmental Defense Fund v. Corps of Engineers, 325 F.Supp. 728 (E.D.Ark. Feb. 19, 1971).

The Environmental Defense Fund is a New York corporation whose principal place of business is in East Setauket, New York, in the Eastern District of New York. The court finds it unnecessary to decide whether plaintiff EDF resides in all districts of New York State or only the Eastern District.

---

2. Letter from Byron R. White to the Hon. James O. Eastland, Feb. 28, 1962 in the U.S.Cong. & Adm.News, 87th Cong., 2d Sess. p. 2788 (1962).

3. In support of the opposite conclusion defendants cite a statement by the floor manager of the bill which became section 1391(e). In response to a question about the meaning of the phrase "except as otherwise provided by law" he gave two examples of actions in which § 1391 (e) is inapplicable. He then stated:

It is my understanding that as a result of section 8(a) of the Tennessee

Valley Authority Act, actions against the TVA would be another example. [108 Cong.Rec. 20,094 (1962) (remarks of Congressman Forrester)].
The court finds his conclusion to be incorrect. Plaintiffs point out that his misapprehension may have stemmed from the fact, that, at the time he spoke, place of residence and inhabitance were the most important, if not the only, criteria for venue of actions against corporations. Therefore, the establishment of residence in 16 U.S.C. § 831g effectively, although not legally, determined venue in suits against TVA.

The court concludes that "the plaintiff" in § 1391(e)(4) means "a plaintiff" rather than "all plaintiffs." Since plaintiff Natural Resources Defense Council, Inc. (NRDC) is admittedly a resident of this District, venue properly lies here.

Numerous courts have pointed out that one of the major purposes of § 1391(e) was to make suits by citizens against governmental agencies and their officials more convenient for plaintiffs. Brotherhood of Locomotive Engineers v. Denver and Rio Grande Western R. R. Co., *supra*, 290 F.Supp. at 616; Powelton Civic Home Owners Association v. Department of Housing and Urban Development, *supra*, at 284 F.Supp. 833. Limiting § 1391(e) to cases where all plaintiffs reside in the district would frustrate this objective, and encourage multiple litigation involving similar disputes by disparate parties in the already overburdened federal courts. Environmental Defense Fund v. Corps of Engineers, *supra*. *Cf.* Manchester Modes, Inc. v. Schuman, 426 F.2d 629, 633 n. 7 (2d Cir. 1970).

C) As mentioned above, subsection (4) of § 1391(e) requires that "no real property" be "involved" in the action, for suit properly to be brought where the plaintiff resides. Defendants contend that plaintiffs' claim is equivalent to a suit to abate a nuisance, or an action in trespass and therefore involves real property. Plaintiffs respond that this action basically aims to compel TVA to honor its obligations under the NEPA, and only incidentally concerns real property. The degree to which "real property" must be involved is also a question of first impression in this Circuit.

Gravity being what it is, the vast bulk of human activities take place on the face of the earth. Consequently, almost any dispute over public or private decisions will in some way "involve real property," taken literally. The touchstone for applying § 1391(e)(4) cannot sensibly be whether real property is marginally affected by the case at issue. Rather, the action must center directly on the real property, as with actions concerning the right, title or interest in real property.

In such cases, the presence of the trial court in the district in which the property lies might materially aid the adjudication. It might be easier to assemble witnesses and documents and for the judge to inspect the property if necessary. In cases involving right, title or interest in property relief might require the trial judge to be familiar with the locale.

■ Plaintiffs here do not seek an adjudication of the validity of defendants' title, leases, or mineral rights, however. Though contracts with third-parties for production of coal might be affected by plaintiff's requested relief, there is nothing inherent in that relief that could not be as easily done by this court as, for example, a court sitting in Tennessee. Environmental Defense Fund v. Corps of Engineers, *supra*, at 1285. Cf. Harms v. Federal Housing Administration, 256 F.Supp. 757, 760–61 (D.Md.1966). Thus, we find that real property is not involved here within the meaning of that section.[4]

### IV. *Jurisdiction*

Defendants contend that the instant action is a local action and that therefore this court lacks jurisdiction. This contention is similar, if not identical, to the one that real property is involved. The distinction between a local action and a transitory action corresponds to the difference between an action *in rem* and one *in personam*. 1 Moore's Federal Practice (2d ed. 1970) ¶ 0.142 [2]. Only where the court must have jurisdiction over the res to afford the relief sought is the action *in rem* and local. *Id.* at p. 1456, with a few exceptions not

---

4. This construction is supported by the legislative history of § 1391(e)(4). See Senate Report No. 1992, 87th Cong., 2d Sess. 4–7 (1962) and Letter from Byron R. White, *supra*, n. 2, as well as by the general purposes of § 1391(e).

pertinent here. Furthermore, actions in fraud, trust and contract, which often bear more directly on land than the instant action, are considered transitory, even though lands not within the jurisdiction of the court may be affected by the decree. *Id.* at p. 1260; Massie v. Watts, 10 U.S. 148, 6 Cranch 148, 158, 3 L.Ed. 181 (1810).

■ As discussed above, plaintiffs' action does not approach the connection ·with land that would render it local for purposes of jurisdiction.

### V. *Indispensable Parties*

Defendants contend that the private coal producers who have contracted to sell strip-mined coal to TVA are indispensable parties, and failure to join them should result in dismissal of plaintiffs' complaint. The first two causes of action seek to enjoin TVA performance of contracts made after January 1, 1970, the effective date of NEPA, to purchase strip-mined coal until the requirements of NEPA are met; the third cause of action does not concern any particular contracts, and therefore, cannot be upset for failure to join parties in any case.

The private contractors cannot be joined in this action because they cannot be served. Kentucky Oak Mining Co. is incorporated in Kentucky; W. B. Spradlin Coal Co. and West Coal Company are residents of Tennessee; Falcon Coal Co., agent and attorney in fact for Kentucky Oak Mining Co., is incorporated in Delaware and is doing business in Kentucky. None of these companies is doing business in the Southern District of New York. Since they cannot be joined the court must decide "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Rule 19(b) Fed.R.Civ.P.

The first factor to consider is whether a judgment rendered in the instant case might be prejudicial to the absent parties. In National Licorice Co. v. NLRB,

309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1940), the Supreme Court explicitly recognized that *public* rights may be vindicated by restraining unlawful actions of a defendant even though the restraint prevented defendant's performance of contracts with third-parties who were not joined in the suit. That case found contracts between an employer and a number of employees to be in violation of the National Labor Relations Act and, therefore, unenforceable by the employer. None of the employees who were parties to the contract were parties to the action. There the action had been brought by the NLRB against the employer to enjoin it from enforcing the illegal contract it had made with its employees.

The Court noted the general rule that where rights arise upon a contract, all of the parties to the contract must be before the court.· It then stated:

"But different considerations may apply *even in private litigation* where the rights asserted arise independently of any contract which an adverse party may have made with another, not a party to the suit, even though their assertion may affect the ability of the former to fulfill his contract. The rights asserted in the suit and those arising upon the contract are distinct and separate so that the Court may, in a proper case, proceed to judgment without joining other parties to the contract, shaping its decree in such manner as to preserve the rights of those not before it." (Citations omitted) (*Id.* at 363, 60 S.Ct. at 577) (emphasis added).

The Court recognized that the effect of the NLRB's order was to preclude the petitioner from carrying out any of the contract provisions. But this order, the Court held,

does not foreclose the employees from taking any action to secure an adjudication upon the contracts, nor prejudge their rights in the event of such adjudication. (*Id.* at 365, 60 S. Ct. at 578).

The Court in *National Licorice* cited Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937), an action by a private party asserting a right protected by federal statute:

> In Virginian Railway Co. v. System Federation No. 40 . . . the effect of the decree was to order the employer to deal exclusively with the Federation, although the employer had a contract with an association not a party to the suit, found to be a dominated labor organization. In every case the third persons were left free to assert such legal rights as they might have acquired under the contracts. But in all, the public right was vindicated by restraining the unlawful: actions of the defendant even though the restraint prevented his performance of the contracts.

The instant action, like that in *National Licorice,* seeks to enforce an essentially public right. See Scenic Hudson Preservation Conference v. Federal Power Commission, 354 F.2d 608 (2d Cir. 1965), cert. denied, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540 (1966); Citizens' Committee for the Hudson Valley v. Volpe, 425 F.2d 97 (2d Cir. 1970); Calvert Cliffs' Coordinating Committee v. Atomic Energy Commission, 449 F.2d 1109 (D.C.Cir., 1971).

■ Plaintiffs do not seek to abrogate the contracts, but to restrain defendants from purchasing coal under them "until such time as the requirements of the National Environmental Policy Act of 1969 are met" (Complaint p. 15). If this relief were granted, the private contractors would still be able to assert their rights against TVA, except that specific performance could not be ordered while TVA was enjoined from purchasing coal under the contracts. National Licorice Corp. v. NLRB, *supra,* 309 U.S. at 365, 60 S.Ct. 569, 84 L.Ed. 799.

■ Nor would participation by these third parties help much to elucidate the issue in the case: whether TVA followed the dictates of NEPA. They would have to take positions about TVA procedures and TVA estimates of environmental harms, topics on which they have no special knowledge.

The second factor Rule 19 directs us to consider is the extent to which prejudice, if any, can be lessened by the shaping of relief. The court could, for example, give TVA a period in which to show compliance before performance of any of the specified contracts was enjoined. In fact, since the longest-running contract expires in June, 1975, the court could conceivably allow TVA to fully perform the contracts, even if they were found to be against national policy. By the time this case is decided there will probably be no more than three years to run on any contract. Since the action seeks to enjoin purchases under the contracts only until the requirements of NEPA are met, and need not adjudicate the third-party rights, a judgment rendered in their absence will be adequate, which fulfills the third consideration prescribed by Rule 19.

Fourth, and most important, it appears that plaintiffs will not have an adequate remedy if their suit is dismissed for non-joinder. Suit could not be brought in Alabama, for the Kentucky companies could not be served there. *Cf.* McKenna v. Udall, 135 U.S.App.D.C. 335, 418 F.2d 1171 (1969).

Further, the burden on the absent parties to protect their interest by intervening would not be overwhelming. Smith v. American Federation of Musicians, 47 F.R.D. 152 (S.D.N.Y.1969); Advisory Committee's Note on Rule 19, 39 F.R.D. 89, 92 (1966).

VI. *Motion to Intervene*

■ National Audubon Society, Inc. (Audubon) moves to intervene pursuant to Rule 24(b) Fed.R.Civ.P. A reading of Audubon's complaint reveals that it presents common questions of law and fact with the main action. Furthermore, Audubon demonstrates a longstanding interest in and familiarity with strip-mining, expertise that may be

helpful in clarifying the facts and issues in this case. It may be noted that Audubon has several chapters and thousands of members in the areas affected by strip-mining. Defendants point to no specific delay or prejudice that would result from Audubon's intervention. Its motion is therefore granted. See Levin v. Ruby Trading Corporation, 333 F.2d 592, 595 (2d Cir. 1964).

Submit order on 5 days notice.