SOUTHERN CALIFORNIA ASSOCIA-
TION OF GOVERNMENTS et
al., Plaintiffs,

v.

Thomas KLEPPE et al., Defendants,

Western Oil & Gas Association et al.,
Defendants-Intervenors.

PEOPLE OF the STATE OF
CALIFORNIA, Plaintiffs,

v.

Thomas KLEPPE et al., Defendants,

Western Oil & Gas Association et al.,
Defendants-Intervenors.

The COUNTY OF LOS ANGELES,
Plaintiffs,

v.

Thomas KLEPPE et al., Defendants,

Western Oil & Gas Association et al.,
Defendants-Intervenors,

AMERICAN LITTORAL SOCIETY et
al., Plaintiffs,

v.

Thomas KLEPPE et al., Defendants,

Western Oil & Gas Association et al.,
Applicants for Intervention.

Civ. A. Nos. 75–1942, 75–1943, 75–1962
and 75–2044.

United States District Court,
District of Columbia.

March 31, 1976.

**564**

Bruce J. Terris, Helen Cohn Needham, Washington, D. C., for So. Cal. Ass'n of Governments et al.

Edwin J. Dubiel, Deputy Atty. Gen. of Cal., John Meck, Office of the Atty. Gen., Los Angeles, Cal., for the People of Cal.

William Bridge, Washington, D. C., Lee Barker, Deputy County Counsel, Los Angeles, Cal., for County of Los Angeles.

Bruce J. Terris, Washington, D. C., Frederic P. Sutherland, Center for Law in the Public Interest, Los Angeles, Cal., for American Littoral Society.

William M. Cohen, Land & Natural Resources Div., Dept. of Justice, Washington, D. C., Warren K. Rich, Asst. Atty. Gen., Dept. of Natural Resources, Annapolis, Md., Gary Bohlke, U. S. Dept. of the Interior, Washington, D. C., for defendants.

Philip K. Verleger, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., Robert J. Pope, E. Edward Bruce, Covington & Burling, Washington, D. C., for defendants-intervenors.

MEMORANDUM OPINION AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

In these consolidated cases, Plaintiffs challenge the decision made by the Federal Government to accelerate the oil and gas leasing program on the Outer Continental Shelf, particularly the first sale under that program (Sale 35) which occurred December 11, 1975, and involved oil leasing off the coast of Southern California. The actions were filed in late November, 1975, and motions to preliminarily enjoin Sale 35 were heard and denied on December 5, 1975. In the Memorandum and Order denying injunctive relief the Court expressed serious reservations regarding the propriety of litigating these actions in this forum in light of an earlier case filed in the Central District of California in which one of the Plaintiffs herein had sought to enjoin or delay oil drilling off the Southern California coast under the acceleration oil leasing program. The parties have briefed the issues regarding dismissal or transfer of these actions to Southern California in light of the earlier, related case and other considerations. The cases are thus currently before the Court on Motions to Dismiss or Transfer and for Other Relief. For reasons set forth below, the Court concludes that these consolidated cases do not belong in this forum and should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a) as interpreted herein.

The statute provides that a district court may transfer any civil action to any other district where it might have been brought where such transfer would be convenient for parties and witnesses and is in the interest of justice. 28 U.S.C. § 1404(a). The "interest of justice" of this provision is "a term broad enough to cover the particular circumstances of each case, which in sum indicate the administration of justice will be advanced by transfer." *Schneider v. Sears*, 265 F.Supp. 257, 263 (S.D.N.Y.1967). Having extensively reviewed the papers in these cases, the Court is persuaded that the seriousness of the *res judicata* and collateral estoppel questions raised, the principles of comity which argue strongly against one federal court interfering with the affairs of another, the fact that California law is significantly involved in the resolution of crucial questions in these cases, the lack of any national policy issue of the type which militates against transfer as interpreted in this Circuit, and the absence of parties in this action which may be indispensable and which can be easily reached in California all

combine to yield that sum of circumstances which warrant transfer of this action under § 1404(a). A further explanation of these reasons follows.

On August 4, 1974, Plaintiff People of the State of California brought an action in the Central District of California against the Department of Interior to enjoin development of the Southern California coast pursuant to the national decision to accelerate oil leasing off the outer continental shelf until environmental impact statements were developed and energy alternatives were adequately considered. *People of State of California v. Morton*, 404 F.Supp. 26 (C.D.Cal.), (hereinafter referred to as the *Williams* case). During the course of that litigation the scope of the lawsuit broadened to include those events which had developed regarding the proposed oil leasing off the coast of Southern California. On November 17, 1975, after full trial to the Court, Judge David W. Williams in a Memorandum Opinion, denied Plaintiffs' requested relief, which would have halted Sale 35, and dismissed the action. 404 F.Supp. 26 (C.D.Cal.1975).

Rarely, if ever, is it possible for one Court to determine all of the thoughts and matters that have been considered by another in reaching a particular decision. This is true no matter how simple the case, extensive the record, or detailed the findings or opinion. Litigation of this magnitude and complexity presents the greatest difficulty. However, without attempting to ascertain every concern studied by the Court in the *Williams* case, it is clear that the following major matters were considered and ruled upon: 1) whether the agency had failed to comply with provisions of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, *et seq.*, in deciding to accelerate oil leasing off the Southern California coast; 2) whether the Environmental Impact Statements (EIS's) were based upon adequate data; 3) whether a cost/benefit analysis was required by NEPA before leasing could proceed; and 4) whether the Pro-

grammatic and Site Specific EIS's were adequate under the standards set forth in NEPA.

Immediately after Judge Williams' decision in California, these cases were filed in the District of Columbia. In *People of State of California v. Kleppe*, CA 75–1943 (hereinafter *People v. Kleppe*) the same Plaintiffs who had so recently been denied relief in the *Williams* case, requested this Court to enjoin the proposed Sale 35 and any further action pursuant to the accelerated oil leasing program on the grounds that: 1) the government had failed to recognize its duty to reserve sufficient power to itself in the program through promulgated rules and regulations and through inclusion of a termination clause in all leases; 2) NEPA had been violated because the decision to proceed with Sale 35 was based upon inadequate data; 3) that the Inter-Governmental Cooperation Act, 42 U.S.C. 4201, *et seq.*, had been violated because the government had failed to consider the Coastal Zone Management Act, 16 U.S.C. § 1451, *et seq.*, and the California Coastal Zone Conservation Plan in proposing Sale 35; 4) that fair market value would not be received for the property rights at stake in Sale 35 due to the lack of sufficient evidence to make a reasonable estimate of value; and 5) that NEPA, the Administration Procedure Act, and other statutes had been violated. It is fairly obvious that these claims, although stated more expansively, are closely related to the issues considered in the *Williams* case and raise serious questions of *res judicata* and collateral estoppel.[1]

The esoteric doctrine of *res judicata* is designed to eliminate repetitive litigation and operates as an absolute bar to relitigation of the same cause of action between the parties and their privies. *Lawlor v. National Screen Service*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319, 47 S.Ct. 600, 601, 71 L.Ed. 1069, 1071 (1927). "If the doctrine of *res judicata* applies, both parties are concluded, not only

1. The Court notes in passing that the Plaintiffs attempted to persuade Judge Williams to nar-row the scope of his findings by filing a Motion to Amend Findings. That motion was denied.

as to things which were determined but as to all matters which might have been determined as well." *Tutt v. Doby*, 148 U.S.App. D.C. 171, 459 F.2d 1195, 1197 (1972). The related doctrine of collateral estoppel prohibits parties who have litigated one cause of action from relitigating in a second and different cause of action, matters of fact which were determined in the first action. *Id.* It is also a "measure calculated to save individuals and courts from relitigating old issues." *Tillman v. Nat'l City Bank*, 118 F.2d 631 (2nd Cir. 1941), *cert. denied*, 314 U.S. 650, 62 S.Ct. 96, 86 L.Ed. 521 (1943); *See generally*, 1B *Moore's Federal Practice* ¶ 0.405.

■ Since Judge Williams has seriously considered some if not all of the questions raised in the Complaint in *People v. Kleppe*, it is appropriate for that Court to determine which claims are barred by *res judicata* because they were actually litigated or should have been litigated in the earlier case. *See, Brotherhood of Locomotive F & E v. Central Georgia*, 411 F.2d 320 (5th Cir. 1969). It is clear that *People v. Kleppe* presents the most apparent *res judicata*

problems because the parties were the same and the subject matter substantially similar. However, the other cases consolidated with *People v. Kleppe* present related, and on occasion, identical problems which necessitate transfer.

An important initial determination must be made whether Southern California Association of Governments (SCAG) and City of Los Angeles, Plaintiffs in CA 75–1942 and CA 75–1962 respectively, are in privy with the State of California for purpose of *res judicata*. This consideration involves analysis of California law and it is a decision more appropriately made in California. In addition, the virtually identical complaints filed by the remaining three plaintiffs,[2] all of whom are represented by the same attorney, raise claims which involve analysis of California law. These complaints challenge both the decision to accelerate and the decision to proceed with Sale 35. Although the bases for relief are significantly broader than that in *People v. Kleppe*, the complaints are sufficiently similar to warrant transfer along with that case.[3]

---

**2.** The fourth complaint, *American Littoral Society, et al. v. Kleppe*, CA 75–2044, is brought by various environmental groups.

**3.** The SCAG and American Littoral Society cases are identical as to the nine claims presented. Briefly stated, plaintiffs' claims are:

(1) that defendants violated their duty under NEPA by failing to consider and to include a right to terminate the leases in the event of actual or threatened environmental harm;

(2) that defendants violated their duty under NEPA by failing to make public either the programmatic or the Southern California Proposed Decision Option Document before final decision on the accelerated program and the Southern California sale, and that the programmatic PDOD incorrectly and inadequately summarized the environmental information;

(3) that the programmatic EIS is inadequate to satisfy the requirements of NEPA, on thirteen specific grounds;

(4) that the failure to take steps to minimize the potential environmental harm which may occur if the accelerated program goes forward and the Southern California sale is permitted violates the defendants' substantive obligations under NEPA;

(5) that the EIS prepared by defendants for the Southern California sale is inadequate to

satisfy the requirements of NEPA, on seven specific grounds;

(6) that the failure to delete certain tracts in San Pedro Bay from the proposed Southern California lease sale will cause environmental harm in violation of defendants' substantive obligations under NEPA;

(7) that the failure of defendants to analyze and obtain fair market value for the oil and gas to be developed in the accelerated leasing program and the Southern California sale violates the Outer Continental Shelf Act and NEPA;

(8) that the accelerated leasing program and the proposed Southern California sale will violate the Coastal Zone Management Act and the Inter-governmental Cooperation Act; and

(9) that the accelerated program and the Southern California sale violate various statutes enacted for the protection of wildlife and endangered species.

The County of Los Angeles case raises these same issues plus two additional ones: that the final Programmatic EIS fails to discuss the criticisms and recommendations submitted by the Court of Los Angeles (Claim # 4) and that the decision to adopt the accelerated leasing program was an abuse of discretion under NEPA and the Administrative Procedure Act (Claim # 7).

Plaintiffs strenuously argue that these cases should not be transferred from this district, the seat of the federal government, because they present a "national policy issue." In *Starnes v. McGuire*, 168 U.S. App.D.C. 4, 512 F.2d 918 (1974) the Court sitting *en banc* considered the propriety of a § 1404(a) transfer in a case brought by a federal prisoner in which the legality of a policy decision made by the Board of Parole in Washington, D. C., was challenged. Unlike that case, however, there is nothing in the record of these cases which persuades the Court that testimony from the policymakers will be required for resolution of the issue presented. To the extent that these cases present a "national policy issue," the legal question can be resolved by interpretation of the relevant statutes. Therefore, these cases do not fit into the doctrine enunciated in *Starnes, supra.*

Another point which further tips the scales in favor of transfer is raised by the Intervenors and Defendants and concerns the interest of successful lessees from Sale 35 in participating in this lawsuit. As explained earlier, these actions were originally filed just prior to Sale 35 and the preliminary injunction denied at the outset sought to enjoin that sale. The sale proceeded, however, as scheduled and oil companies who were successful bidders have obtained valuable rights to explore and develop properties off the outer continental shelf. Therefore, they have a significant interest in the outcome of this litigation. Jurisdiction over these oil companies is easily obtained in California where the lessees are conducting operations in conjunction with the leased properties. *McKenna v. Udall*, 135 U.S.App.D.C. 335, 418 F.2d 1171 (1969). The Court is not in a position to decide at this juncture whether the oil companies are indispensable parties or not. Rather, this determination should be made in the forum where a complete disposition of the controversy can be made.

Finally, it should be noted that the Court has seriously considered the alternative suggestion of all parties to sever the claims which relate to Sale 35, transfer them to California, and determine the remaining claims, if any, in this forum. However, the Court is convinced that *People v. Kleppe* must be transferred in its entirety in the interest of sound judicial economy. And the complexity of "line-drawing" in carving out those issues in the remaining actions which might arguably be completely separate from Sale 35 is so difficult as to be virtually impossible. For all these reasons, these cases more properly belong in the Central District of California.

Based upon the foregoing, it is this 31st day of March, 1976,

ORDERED that Defendants' and Intervenors' Motions to Transfer be and hereby are GRANTED; and it is

FURTHER ORDERED that these actions be and hereby are TRANSFERRED to the Central District of California; and it is

FURTHER ORDERED that the Clerk of the Court shall transfer these actions forthwith.