BOARD OF TRUSTEES, SHEET METAL WORKERS NATIONAL FUND; Board of Trustees, Sheet Metal Workers National COLA Fund; Board of Trustees, National Stabilization Agreement of Sheet Metal Industry Trust Fund; Board of Trustees, National Training Fund for the Sheet Metal and Air Conditioning Industry; Board of Trustees, National Energy Management Institute Committee, Plaintiffs,

v.

BAYLOR HEATING & AIR CONDITIONING, INC., Defendant.

No. Civ. A. No. 88–1314–A.

United States District Court, E.D. Virginia, Alexandria Division.

Dec. 29, 1988.

Marc E. Le Blanc, Susan Tsui, Alexandria, Va., for plaintiffs.

William Michael Schiff, Robert H. Brown of Kahn, Dees, Donovan & Kahn, Evansville, Ind., Amy Berman of Venable, Baetjer & Howard, McLean, Va., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

This Section 1404(a) transfer motion arises in the context of an ERISA[1] suit. More specifically, defendant, a small southwestern Indiana contractor, is being sued for failing to make contributions to employee benefit plans as required by an alleged collective bargaining agreement. Defendant seeks to transfer this matter from this District to the Southern District of Indiana. Convenience of the parties and the witnesses and the pendency of a related matter in Indiana are the chief grounds relied upon in support of the motion. Plaintiffs are the five separate Boards of Trustees of the Sheet Metal Workers National Pension Fund. They vigorously oppose transfer, arguing that ERISA's special venue provisions preclude transfer, that the balance of convenience to the witnesses and parties weighs against transfer, and that the interest of justice also militates against transfer.

For the reasons stated herein, the motion to transfer is denied. Defendant has not borne its burden of showing that transfer is warranted. Defendant's reliance on inconvenience to its witnesses is not sufficiently documented to justify transfer. Nor does the interest of justice militate in favor of transfer. The matters pending in Indiana and the Seventh Circuit do not justify transfer to Indiana.

### Background

Defendant is an Indiana corporation headquartered in Evansville. It is engaged in the heating and air conditioning contracting business in an area within a 100–mile radius of Evansville. Defendant's offices and business records are located in Evansville and its officers all reside there. Since May 1987, defendant has employed a number of employees, all but one of whom are Indiana residents.[2] None of these employees has ever performed any work for defendant outside that 100 mile radius. Defendant has never done business in Virginia and, except for mailing contributions to plaintiffs under a pre-existing labor contract, has no contacts whatsoever with Virginia.[3]

As noted, plaintiffs are the five separate Boards of Trustees of the Sheet Metal Workers National Pension Fund.[4] They are, in essence, labor management trust funds charged under the law and by contract with the administration of the various employee benefit plans for members of the National Sheet Metal Workers Union. Plaintiffs' business offices and records are

---

1. Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(g)(2) et seq.

2. Defendant initially asserted that he employed at least 14 persons. During oral argument, Defendant's attorney confirmed that this figure was meant to suggest the maximum number of workers covered by the collective bargaining agreement. Yet, in a supplemental memorandum submitted following oral argument, Defendant listed six supervisors, six clerical workers and 28 workers who might be covered under the disputed collective bargaining agreement.

3. Personal jurisdiction is not an issue in this case. Defendant concedes it. Defendant made

contributions to the funds here in Virginia prior to May 1987. These contributions demonstrate that defendant purposefully availed itself of the privilege of transacting business in Virginia. See I.A.M. Pension Fund, Benefit Plan A v. Wakefield Indus. Inc., Div. of Capehart Corporation, 699 F.2d 1254, 1257–58 (D.C.Cir.1983).

4. Specifically, these are (i) the Sheet Metal Workers National Pension Fund, (ii) the Sheet Metal Workers National COLA Fund, (iii) the National Stabilization Agreement of Sheet Metal Industry Trust Fund, (iv) the National Training Fund for the Sheet Metal and Air Conditioning Industry, and (v) the National Energy Management Institute Committee.

located chiefly in Alexandria, Virginia.[5] Virtually all of their 150 employees work in Alexandria. Plaintiffs' members, the Trustees, meet, transact business and administer the funds in this district.

Defendant was a signatory to a collective bargaining agreement with Local Union No. 20 of the Sheet Metal Workers Union. Local Union No. 20 and its business agent are located in Evansville, Indiana. The collective bargaining agreement apparently included an arbitration clause. This clause required the parties to arbitrate in the event they could not reach agreement on a new collective bargaining agreement when the then-existing agreement expired. This in fact occurred; the agreement expired and the parties were unable to reach an agreement. Local Union No. 20 sought arbitration. Defendant elected not to participate in the arbitration. The arbitrator ruled in favor of Local Union No. 20. He ruled specifically that a new collective bargaining agreement was established between defendant and Local Union No. 20. This agreement provided, *inter alia*, for contributions to plaintiffs' funds on behalf of defendant's employees. Defendant chose to ignore this arbitration award. Local Union No. 20 then brought suit in the federal district court for the Southern District of Indiana to confirm the award. The union prevailed; Judge Steckeler granted summary judgment confirming the arbitration award. *Sheet Metal Workers Local Union No. 20 v. Baylor Heating & Air Conditioning, Inc.*, 688 F.Supp. 462 (S.D. Ind.1988). This matter is now on appeal to the Seventh Circuit Court of Appeals.

Indiana is also the situs of two additional, related disputes between defendant and Local Union No. 20. In March 1987, Local Union 20 filed an unfair labor practice charge against defendant alleging that refusal to recognize and bargain with the union constituted an unfair labor practice. The National Labor Relations Board's (NLRB) Acting Regional Director rejected this charge, pointing out that no evidence had been presented to prove that the union could claim a majority relationship with defendant's employees at the time the second contract was negotiated. Indeed, as the Acting Director noted, only one union member was apparently working for defendant at that time.

On September 14, 1988, the NLRB issued a complaint against Local Union No. 20, alleging that the Local's efforts to compel defendant's adherence to the collective bargaining agreement violated Section 8(b)(1)(B) of the National Labor Relations Act. 29 U.S.C. § 158(b)(1)(B). This complaint is pending and will ultimately be heard in Evansville, Indiana. Thereafter, on November 9, 1988, the NLRB notified defendant that an election would be held November 30, 1988 to permit defendant's employees to vote on whether they wanted Local Union No. 20 to represent them. This election was conducted in Evansville, Indiana. The employees voted by a large majority not to be represented by the union.

### Analysis

Section 1404(a)'s general language is rarely dispositive in specific cases. Its language is too general. Rather, the Section vests district courts with substantial discretion to decide transfer motions by weighing various factors under the broad rubric of "the convenience of the parties and witnesses," and "the interest of justice." *See* 28 U.S.C. § 1404(a).[6] The starting point

---

**5.** Some records are apparently stored in Springfield, Virginia and in nearby Hyattsville, Maryland.

**6.** There are, however, two prerequisites to the application of Section 1404(a). Both are satisfied here. First, the Section applies only where venue is proper in the transferror forum. The parties agree venue is proper in this District because plaintiffs administer their funds here. *See* 29 U.S.C. § 1132(e)(2); *see also Sprinzen v. Supreme Court of New Jersey*, 478 F.Supp. 722

(S.D.N.Y.1979) (an employee benefit plan is administered where the plan's offices are located, where its affairs are conducted, where its trustees meet, and where its records are kept). Second, the proposed transferee forum must be one where the suit might have been brought. That, too, is true here. ERISA's venue provisions, 29 U.S.C. § 1132(e)(2), also provide for venue where the "defendant resides." Defendant resides in Evansville, Indiana, the proposed transferee forum.

for analysis of what factors are relevant and the weight they should be accorded is *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).[7] That seminal decision offered the following guidance:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; ... and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Numerous district court decisions in the wake of *Gilbert* identify and analyze the various factors that merit consideration in the transfer calculus.[8] Each of the factors pertinent to the resolution of this transfer motion are separately discussed below.

(1) *Plaintiff's Choice of Venue*

A number of settled principles bear on the weight accorded plaintiff's forum choice in the transfer calculus. In general, plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate.[9] Indeed, before transfer is warranted, a defendant must demonstrate that the deference due plaintiff's choice of venue is "clearly outweighed by other factors." *Darchuk v. Kellwood Co.*, 47 Fair. Empl. Prac. Cas. (BNA) 1259 (E.D.Ark. July 8, 1988) (1988 U.S. Dist. LEXIS 12859) [1988 WL 126573]; *see also Central States, Southeast &*

*Southwest Area Pension Fund v. Sloan*, No. 88-C-6316 (N.D.Ill. Nov. 15, 1988) (1988 U.S. Dist. LEXIS 12865) [1988 WL 124334]. But the weight given to plaintiff's choice of venue varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action. For obvious reasons, the plaintiff's choice is entitled to less weight where there is little to connect the chosen forum with the cause of action.[10] And ordinarily, a plaintiff's choice of his home forum for venue purpose is given greater weight than a plaintiff's choice of a foreign forum.[11]

In ERISA cases, there is a further policy rationale in favor of according plaintiff's choice of forum somewhat greater weight than would typically be the case. Congress recognized as a special goal of ERISA that

> [t]he enforcement provisions have been designed specifically to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act. The intention of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants.

H.R.Rep. No. 533, 93d Cong., 1st Sess., *reprinted in* 1974 U.S.Code Cong. & Ad-

---

**7.** *Gulf Oil* dealt with transfer under common law principles of *forum non conveniens*. It predated the enactment of Section 1404(a). Nonetheless, *Gulf Oil's* principles for analyzing whether transfer is appropriate are typically applied to Section 1404(a) transfer motions. However, as the Supreme Court held in *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955), Congress intended to permit transfers under Section 1404(a) on a lesser showing of inconvenience than was required under *forum non conveniens* standards.

**8.** A helpful catalogue of these decisions appears in Annotation, *Questions as to Convenience and Justice of Transfer Under Forum Non Conveniens Provision of Judicial Code, 28 U.S.C. § 1404(a)*, 1 A.L.R. Fed. 15 (1969).

**9.** *See, e.g., Gulf Oil v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1946); *Akers v. Norfolk & Western Ry. Co.*, 378 F.2d 78 (4th Cir.1967).

**10.** *See McFarland v. Yegen*, 699 F.Supp. 10, 12 (D.N.H.1988); *Heyco, Inc. v. Heyman*, 636 F.Supp. 1545, 1551 (S.D.N.Y.1986); *cf. Central States, Southeast & Southwest Area Pension Fund v. Brown*, 587 F.Supp. 1067, 1070 (N.D.Ill. 1984) (fund's choice of forum entitled to substantial weight unless forum lacks significant contact with underlying cause of action).

**11.** *See Palka v. Hylwa*, C.A. No. 85-2480 (D.Kan. Sept. 3, 1986); *Trustees of the National Automatic Sprinkler Indus. Pension Fund*, 578 F.Supp. 94, 96 (D.Md.1983).

min.News 4639, 4655.[12] Given this, plaintiffs' venue selection under ERISA is arguably entitled to somewhat greater deference than that typically accorded plaintiffs' choice of forum. *See Connors v. Peles Coal Co.*, 637 F.Supp. 321, 322 (D.D.C. 1986).[13]

These principles, applied to the instant case, lead to the conclusion that plaintiffs' forum choice is not dispositive here—it neither prohibits nor requires transfer—but is instead a factor of some significance in the transfer equation. This District is plaintiffs' home forum. As noted, this selection is, therefore, entitled to substantial deference, but is not controlling. This factor's weight in the equation is reduced somewhat by the absence here of any substantial nexus between this District and the plaintiff's underlying action. The cause of action arose in Indiana, not Virginia. This District's connection with the cause of action is limited to the administrative functions carried on by plaintiffs in determining defendant's liability, if any, to the benefit or pension plans. By contrast, the proposed transferee forum, the Southern District of Indiana, is more closely connected with the cause of action. Indiana is where the workers were employed, where most of the work was performed, and where the underlying collective bargaining agreement was allegedly negotiated or created. Thus, the weight accorded to plaintiffs' choice of venue is diminished to some extent by Virginia's lack of contacts to this dispute. At the same time, however, this factor's weight must be increased somewhat to reflect Congressional policies favoring plaintiffs' choice of venue in ERISA actions.[14] In sum, plaintiffs' forum choice here is significant, but neither dispositive nor conclusive.

12. Another ERISA policy rationale favoring a plaintiff's choice of forum is that the Act depends, in large part, on private parties for enforcement of its substantive provisions. *See* H.R.Rep. No. 533, 93d Cong., 1st Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4649 ("At the same time, the safeguarding effect of the fiduciary responsibility section will operate efficiently only if fiduciaries are aware that the details of their dealings will be open to inspection, and that individual participants and beneficiaries will be armed with enough information to enforce their own rights as well as the obligations owed by the fiduciary to the plan in general."). This policy rationale is not present here. It applies to pension fund participants and beneficiaries, not to the funds themselves.

13. But contrary to plaintiffs' suggestion here, ERISA's special venue provisions do not operate to preclude transfer. This suggestion, also rejected by the court in *United Foods v. Schaufler*, No. 88–C–3176 (N.D.Ill. Nov. 15, 1988) [1988 WL 124131] (1988 U.S. Dist. LEXIS 12894), is without support in ERISA's language or legislative history. No special venue provisions from other statutory schemes have been cited as creating an absolute bar to transfer. *See, e.g., Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954–55 (9th Cir.1968) (transfer appropriate even when there is a general policy in favor of plaintiff's choice of forum in antitrust suits). Absent an express statement of Congressional purpose to achieve this result, this Court will not imply preclusion of Section 1404(a) from the mere existence of a special venue provision. In the words of the *United Foods* court:

The fact that the statute sets out three places where suit may be brought does not mean that the suit once brought in any of these three locations chosen by the plaintiff must thereafter in any case remain there. It is too well settled that this court, when considering a motion to transfer under section 1404(a), is not inescapably bound by plaintiff's preference....

*United Foods*, slip op. at 3.

14. *See* 29 U.S.C. § 1132(c). There is an illusory precision to this exercise which should not go unnoticed. It is true, to be sure, that some courts recognize that ERISA's special venue provision reflects Congressional intent that greater than normal deference should be paid to plaintiff's choice of forum in ERISA cases. *See Int'l Bhd. of Painters & Allied Trades Union v. Best Painting & Sandblasting Co., Inc.*, 621 F.Supp. 906, 907 (D.D.C.1985); *Trustees of Nat'l Automatic Sprinkler Indus. Pension Fund v. Best Automatic Fire Protection, Inc.*, 578 F.Supp. 94, 95–96 (D.Md.1983). However appealing this point may be in the abstract, it is of doubtful practical help to courts and litigants in resolving Section 1404(a) motions in ERISA cases. Some skepticism is warranted over whether courts can effectively differentiate between the substantial, but not decisive, weight accorded to plaintiff's venue selection under the general venue statute and the somewhat greater, but still not decisive, deference claimed for venue selections under the ERISA statute. The point is that the transfer calculus is qualitative, and not quantitative. Thus, care should be taken that various verbal formulations on weight to be accorded transfer factors do not mask more about transfer decisions than they disclose.

### (2) *Witness Convenience and Access*

Witness convenience is often dispositive in transfer decisions.[15] But the influence of this factor cannot be assessed in the absence of reliable information identifying the witnesses involved and specifically describing their testimony.[16] This type of particularized information, typically submitted in affidavit form, is necessary to enable the court to ascertain how much weight to give a claim of inconvenience. Inconvenience to a witness whose testimony is cumulative is not entitled to greater weight. By contrast, greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue.[17] In many instances, the original forum is convenient for plaintiff's witness,[18] but inconvenient for defendant's witnesses, and the reverse is true for the transferee forum. Under these circumstances, transfer is inappropriate because the result of transfer would serve only to "shift the balance of inconvenience." *Eastern Scientific Marketing v. Tekna–Seal Corp.*, 696 F.Supp. 173, 180 (E.D.Va.1988); *Kansas City Bricklayers Employee Pension Fund v. Bennett Masonry Contractor*, 703 F.Supp. 883 (D. Kan.1988) (1988 U.S. Dist. LEXIS 10966).

Defendant here asserts that the balance of witness inconvenience weighs decisively in favor of transfer to Indiana. As it happens, defendant's first effort to show this was wholly inadequate; it was merely a conclusory statement that witnesses located in Indiana would be inconvenienced if the case were to go forward in Virginia. Defendant failed to identify the witnesses and to describe their testimony with the requisite particularity. At a hearing on December 16, 1988, the Court gave defendant a second bite at the apple—an opportunity to supplement its initial affidavit. In response, defendant submitted a more detailed filing. This filing, a statement by defendant's Indiana counsel, asserts that defendant's time cards and invoices are insufficient by themselves to enable one to determine whether each employee's work on all jobs fell within the scope of work covered by the collective bargaining agreement. Defendant claims, therefore, that all six of its supervisors will have to appear as witnesses. Also, at least one of defendant's six clerical employees is said to be

---

**15.** Indeed, witness convenience has been a major factor in transferring a number of ERISA cases. *See, e.g., United Food & Commercial Workers Union v. Schaufler*, No. 88–C–3176 (N.D.Ill. July 25, 1988) [1988 WL 79632] (1988 U.S. Dist. LEXIS 7891); *Darchuk v. Kellwood Co.*, 47 Fair. Empl. Prac. Cas. (BNA) 1259 (E.D.Ark. July 8, 1988) [1988 WL 126573] (1988 U.S. Dist. LEXIS 12859); *Countryman v. Stein Roe & Farnham*, 681 F.Supp. 479, 483–84 (N.D. Ill.1987); *Central States, Southeast & Southwest Area Pension Fund v. Brown*, 587 F.Supp. 1067, 1070 (N.D.Ill.1984); *Nat. Electric Contractors Assoc.—Int'l Bhd. of Electrical Workers v. Brannen Electric Co.*, No. 83–C–6161 (N.D.Ill. Nov. 30, 1983).

**16.** *See Piper Aircraft v. Reyno*, 454 U.S. 235, 258–59, 102 S.Ct. 252, 267, 70 L.Ed.2d 419 (1981); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *United States Telecom, Inc. v. Hubert*, 678 F.Supp. 1500, 1505–6 (D.Kan.1987); *Development Co. of North America v. Insurance Co. of North America*, 249 F.Supp. 117 (D.Md.1966); *Alabama G.S. R.R. v. Allied Chemical Co.*, 312 F.Supp. 3 (E.D. Va.1970).

**17.** Where witness credibility is not an issue, the use of depositions is an acceptable means of lessening the importance of witness inconvenience as a factor in the transfer equation. *See Trustees of National Elevator Indus., Pension, Welfare & Education Funds v. Artt Elevator Company*, Civil Action No. 87–4865 (E.D.Pa. Feb. 3, 1988) [1988 WL 7846] (1988 U.S. Dist. LEXIS 771); *Robbins v. Hernstrom*, No. 80–C–5947 (N.D.Ill. March 11, 1981).

**18.** Some courts consider inconvenience to plaintiff's witnesses to be entitled to greater weight than inconvenience to defendant's witnesses. *See Envtl. Serv., Inc. v. Bell Lumber & Pole*, 607 F.Supp. 851, 853 (N.D.Ill.1984). This seems to be a restatement of the plaintiff's forum choice factor. If so, it would be double counting to restate this factor in terms of witness inconvenience. Note, however, that plaintiff's choice of venue may be entitled to less weight in cases where plaintiff's principal witnesses would suffer greater inconvenience in the original forum than in the transferee forum.

required to testify regarding record-keeping procedures. In the event that plaintiffs challenge the supervisors' testimony, individual employees may also be required to testify.

This second filing is nearer the mark, but still falls short. It fails to show persuasively [20] that the records will not be, or are not likely to be, conclusive on the question of whether certain work performed fell within the terms of the bargaining agreement. Nor is there any persuasive showing that all six supervisors would be needed. There is no detailed description of the supervisors' testimony and no convincing showing that the supervisors' testimony would be probative.[21]

The Virginia forum plainly presents more inconvenience to defendant's witnesses. Plaintiffs' only witnesses, after all, will be auditors who review defendant's time cards and financial records. Defendant, however, has not persuaded this Court that the inconvenience to its witnesses rises to the level required to warrant transfer to Indiana.

### (3) *Convenience of Parties*

The parties' relative convenience is also a relevant transfer factor. For example, in *Sheet Metal Workers National Pension Fund v. Gallagher*, 669 F.Supp. 88 (S.D.N.Y.1987), Judge Edelstein found that transfer of an ERISA suit to New Jersey was appropriate when all of the plaintiffs and all of the defendants were from either New Jersey or Virginia, and the operative facts underlying the complaint occurred in New Jersey.[22] As these decisions reflect, this factor is chiefly operative in cases where the plaintiff chooses a forum away from home. Under those circumstances, plaintiff's venue choice is given less weight and if the venue substantially inconveniences defendants, transfer may be ordered. On the other hand, when plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer. Plaintiffs are assumed to have filed suit in the forum most convenient for them. Defendants may be inconvenienced by litigating in plaintiffs' home forum, but transfer would likely serve only to "shift the balance of inconvenience" from defendant to plaintiff. As a district court in the Northern District of Illinois pointed out, "Newton's law of conservation of energy is at work here: Increased convenience to [defendant] from a transfer would be matched by increased inconvenience to [plaintiffs], just as [plaintiffs'] maximum convenience in retaining the forum of their choice generates some inconvenience for [defendant]." *Robbins v. Hernstrom*, No. 80–C–5947, slip. op. at 2 (N.D.Ill. March 11, 1981)[23]

---

**20.** In a transfer motion, movant bears a heavy burden of persuasion. *See Central States, Southeast & Southwest Area Pension Fund v. Brown*, 587 F.Supp. 1067, 1070 (N.D.Ill.1984); *Ayers v. Arabian Oil Co.*, 571 F.Supp. 707 (S.D.N.Y.1983); *Mulcahy v. Guertler*, 416 F.Supp. 1083 (D.Mass.1976).

**21.** The Court is not persuaded that documents and some limited, sharply focused deposition testimony are not all that is needed to dispose of the question of whether certain work is covered by the collective bargaining agreement. Also, testimony concerning bookkeeping methods could be obtained by deposition, if not stipulated. Defendant lists 291 construction contracts and over 1,000 service calls on which covered work may have been performed. Based on the existing record, the Court considers it very unlikely that it will be either necessary or practical for all six supervisors to testify on the work performed by each employee on each contract and call.

**22.** *See also Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954–5 (9th Cir.1968); *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F.Supp. 1185, 1187 (N.D.Ill.1983); *King v. Johnson Wax Assoc., Inc.*, 565 F.Supp. 711, 719–20 (D.Md.1983).

**23.** *See also Central States, Southeast & Southwest Areas Pension Fund v. Sloan*, No. 88–C–6316 (N.D.Ill. Nov. 15, 1988) (1988 U.S. Dist. LEXIS 12865) [1988 WL 124334]; *Kansas City Bricklayers Employees Pension Fund v. Jerry Bennett Masonry Contractor, Inc.*, 703 F.Supp. 883 (D.Kan.1988) (1988 U.S. Dist. LEXIS 10966); *Suburban Teamsters of Northern Illinois Welfare & Pension Funds v. Pontiac Furniture, Inc.*, No. 86–C–2651 (N.D.Ill. June 9, 1986) [1986 WL 6953]; *Cement Masons v. Passanti Construction Co.*, No. 85–C–7852 (N.D.Ill. Jan. 14, 1986) [1986 WL 1416]. *But see Pepsico v. Bd. of Trustees of Western Conference of Teamsters Pension Trust Fund*, No. 87 Civ. 3968 (SWK) (S.D.N.Y. June 10, 1988) [1988 WL 64869] (1988 U.S. Dist. LEXIS 5322) (ordering transfer even though plaintiff chose its

Plaintiffs, in this case, filed suit in their home forum. There is no suggestion that plaintiffs here are forum shopping. Defendant argues that Virginia is an inconvenient situs for it to contest the suit. Similarly, however, Indiana is an inconvenient location for plaintiffs to prosecute the suit. Transfer would, therefore, only shift the balance of inconvenience from defendant to plaintiffs. Under these circumstances, the convenience of the parties factor does not militate persuasively in favor of transfer.

### (4) *Interest of Justice*

The "interest of justice" category is designedly broad. It is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties. Such factors may include, for example, the pendency of a related action,[24] the court's familiarity with the applicable law,[25] docket conditions,[26] access to premises that might have to be viewed,[27] the possibility of unfair trial,[28] the ability to join other parties [29] and the possibility of harassment.[30] In ERISA cases, defendants often argue that the interest of justice support transfer to their home forum. In these instances, defendants are typically small companies with meager resources. Plaintiffs, by contrast, are often pension funds with hundreds of employees and millions of dollars in assets. For some, the disparity in size and financial status may suggest a presumption in favor of transfer.[31] Here, defendant asserts that its relatively small size is a compelling factor in favor of transfer. This argument is finally unpersuasive. Defendant's assertion that it is too small to defend this suit effectively

home forum primarily because of inconvenience to defendants).

**24.** *See A.J. Indus., Inc. v. United States Dist. Court for Cent Dist of California*, 503 F.2d 384 (9th Cir.1974); *Chemical Bank v. Geller*, 727 F.2d 61, (2d Cir.1984) *reh. denied, mod. on other grounds*, 734 F.2d 132 (2d Cir.1984); *Factors, Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Pepsico, Inc. v. Trustees of Western Conference of Teamsters Pension Trust Fund*, No. 87–Civ.–3968 (SWK) S.D.N.Y. June 13, 1988) [1988 WL 64869] (1988 U.S. Dist. LEXIS 5322); *Frontier Airlines v. Security Pacific Nat. Bank*, 696 F.Supp. 1403, 1406 (D.Colo.1988); *Countryman v. Stein Roe & Farnham*, 681 F.Supp. 479, 484 (N.D.Ill.1987).

**25.** *See Sheetmetal Workers Nat. Pension Fund v. Gallagher*, 669 F.Supp. 88, 93 (S.D.N.Y.1987); *Southern California Assn. of Governments v. Kleppe*, 413 F.Supp. 563 (D.Colo.1976); *Anderson v. Thompson*, 634 F.Supp. 1201 (D.Mont.1986); *Vaughn v. American Basketball Assoc.*, 419 F.Supp. 1274 (S.D.N.Y.1976). However, this factor is generally not given much weight unless the law to be applied is complex or ambiguous. *See Bodine's Inc. v. Sunny–O, Inc.*, 494 F.Supp. 1279 (N.D.Ill.1980); *Bates v. J.C. Penney Co.*, 624 F.Supp. 226 (W.D.N.C.1985).

**26.** *See Societe Commerciale de Transports Transatlantiques v. S.S. "African Mercury"*, 366 F.Supp. 1347 (S.D.N.Y.1973); *Banks v. Marine Navigation Sulphur Carriers, Inc.*, 545 F.Supp. 39 (E.D.Pa.1982); *Kramer v. Burlington Northern, Inc.*, 453 F.Supp. 114 (W.D.Wis.1978), *aff'd mem.*, 610 F.2d 819 (7th Cir.1979).

**27.** *See Culbertson v. Ford Motor Co.*, 531 F.Supp. 406 (E.D.Pa.1982); *Franklin v. Southern R. Co.*, 523 F.Supp. 521 (D.D.C.1981); *Mead Corp. v. Oscar J. Boldt Constr. Co.*, 508 F.Supp. 193 (S.D. Ohio 1981).

**28.** *See Kirk v. Spur Distributing Co.*, 95 F.Supp. 428 (D.Del.1950); *Wilson v. Great Atlantic & Pacific Tea Co.*, 156 F.Supp. 767 (W.D.Mo.1957); *Haase v. Gilboy*, 246 F.Supp. 594 (E.D.Wis.1965).

**29.** *See Prentice–Hall Corp. v. Ins. Co. of North America*, 81 F.R.D. 477 (S.D.N.Y.1979); *Biggers v. Borden, Inc.*, 475 F.Supp. 333 (E.D.Pa. 1979); *United States v. Casey*, 420 F.Supp. 273 (S.D.Ga.1976).

**30.** *See United States v. General Motors Corp.*, 183 F.Supp. 858 (S.D.N.Y.1960); *Mazinski v. Dight*, 99 F.Supp. 192 (W.D.Pa.1951).

**31.** A number of opinions from the Northern District of Illinois rely almost exclusively on the size disparity between the pension funds and the employers in ordering transfer. *See, e.g. United Food & Commercial Workers Union v. Schaufler*, No. 88–C–3176 (N.D.Ill. July 22, 1988) [1988 WL 79632] (1988 U.S. Dist. LEXIS 7891); *Central States, Southeast & Southwest Area Pension Fund v. Brown*, 587 F.Supp. 1067, 1071 (N.D.Ill.1984); *Nat. Electric Contractors Assoc.— Int'l Bhd. of Electrical Workers v. Brannen Electric Co.*, No. 83–C–6161 (N.D.Ill. Nov. 30, 1983); *see also Martin v. Niblock Excavating, Inc.*, No. 79–C–4356 (N.D.Ill. Jan. 11, 1980). These results, it might be argued, stem from giving the disparate size factor weight under two separate categories, convenience of the parties and interest of justice.

is conclusory. There is no convincing evidence that defendant's size makes it incapable of defending a suit in Virginia. To be sure, defendant's costs will likely increase by having to defend the suit in Virginia. But defendant has not demonstrated that it is so small and so lacking in resources that the interest of justice require transfer to Indiana.[32]

Additionally, other "interest of justice" factors weigh against transfer here. First, under ERISA, funds have a fiduciary duty to conserve their assets for their beneficiaries. This goal would be undercut if pension funds, which are not infrequently larger than their opponents, were forced on this ground alone to pursue their claims for delinquent employer contributions in faraway transferee forums. *See Central States, Southeast & Southwest Area Pension Fund v. Madison Cartage Company,* No. 86–C–8705 (N.D.Ill. May 4, 1987) [1987 WL 10582] (1987 U.S. Dist. LEXIS 3633). Equally important is the interest funds have in being subject to uniform interpretations of ERISA and their plans. If compelled to litigate in multiple circuits chiefly because their opponents are small, this important interest is undercut. As noted in *Employees Sav. Plan of Mobil Oil Corp. v. Vickery,* 99 F.R.D. 138 (S.D.N.Y.1983),

> among federal courts, totally uniform construction of a federal statute is frustrated because statutes often are not clearly and artfully drawn and are the product of compromise in the legislative process. Variations among the circuits in the construction of a statute do appear from time to time.... Efficient administration of plans can be accomplished most easily if the governing law is clear. Plaintiffs, therefore, have an interest in having courts in this circuit resolve disputes that affect the administration of the Plans....

*Id.* at 144 (denying defendant's motion to transfer due to pension fund's interest in

uniform application of ERISA and convenience of parties).

The final "interest of justice" factor pertinent here is the pendency of a related, potentially dispositive matter in the Seventh Circuit Court of Appeals. At first blush this factor suggests that transfer is appropriate. In general, the pendency of a related action in the transferee forum favors transfer where it would be both feasible and beneficial to consolidate the actions. *See Frontier Airlines v. Security Pacific Nat. Bank,* 696 F.Supp. 1403, 1406 (D.Colo.1988) (related action in California suggests transfer appropriate); *Worthley v. Rockville Leasecar, Inc.,* 328 F.Supp. 185 (D.Md.1971). Here, however, this general rule does not apply. Consolidation is unlikely. The causes of action and the parties are not precisely the same. Nor is there any risk of inconsistent results on the central common issue—namely, whether the arbitration was effective to make the succeeding collective bargaining agreement binding. This Court will be bound by the Seventh Circuit's determination of this issue. If the Seventh Circuit rejects the arbitrator's conclusion and rules that no collective bargaining agreement became effective as a result of the arbitration, then plaintiffs' claims here fail. Their counsel properly conceded this during oral argument. On the other hand, if the Seventh Circuit affirms the arbitrator's ruling, then this action will proceed to determine the amount of contributions defendant owes under the collective bargaining agreement upheld by the Seventh Circuit. In sum, the pendency of the Seventh Circuit appeal is no magnet for transfer. Missing are the attraction of potential consolidation and avoidance of inconsistent results. The outcome here might well be different (i) if the instant and pending actions shared a number of common legal and factual issues yet to be resolved, (ii) if a common, continuing remedy were appropriate,[33] and (iii) if con-

---

**32.** Significant in this respect is that the NLRB found that defendant derived gross revenues in excess of $500,000 over the course of a twelve month period.

**33.** Plaintiffs initially requested as part of their relief a continuing permanent injunction. The prospect of having to monitor injunctive relief, if ordered, is one factor properly considered in determining whether transfer is appropriate.

solidation of the action held out the promise of general savings of resources and the avoidance of a real risk of inconsistent results.

For all the reasons stated herein, defendant's motion to transfer is denied. An appropriate order will issue.

*See Central States, Southeast & Southwest Pension Fund v. Brown,* 587 F.Supp. 1067 (N.D. Ill.1984). The election subsequently held among Defendants' employees, in which these employees rejected union representation, mooted plaintiffs' request for continuing injunctive relief. This Court, therefore, need not consider whether monitoring injunctive relief weighs in favor of transfer in this case.